UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHRISTOPHER K. SWEENEY,
Plaintiff,

vs. CASE NUMBER: 5:25-cv-00117-TKW-MJF
Jury Trial Requested? ✓ Yes ___ No

ACRO CONSTRUCTION, LLC,
And ALAN COOPER (Individual and/or Corporate Capacity),
Defendants.

---

**AMENDED COMPLAINT**

1. COMES NOW, the Plaintiff, Christopher K. Sweeney, Pro Se and files this Amended Complaint against ACRO CONSTRUCTION, LLC, and ALAN COOPER, pursuant to the Court's Order requiring action by September 5, 2025.

FILED USDC FLND TL
SEP 3 '25 PM3:51

## INTRODUCTION

2. Plaintiff, seeks redress for Defendants willful violations of the FLSA, 29 U.S.C. § 201 et seq., violations of State and Federal Wage and Labor laws, relating to the non-payment of Overtime.

3. The Plaintiff also seeks redress for retaliation by being terminated for hiring an attorney for inquiry into labor law violations on a labor payment issues, where the termination letter included knowingly falsified information and reference to federally protected activity as reasons for termination, and the unjust enrichment where Plaintiff bore the burden of the Defendant's business expenses.

4. Plaintiff filed a Complaint on April 9, 2025 in Florida Court, which was filed in this Court on May 20, 2025 by Defense Counsel, Plaintiff was instructed to Amend his Complaint by the Court on August 20, 2025 by September 5, 2025, this Amended Complaint follows.

## PARTIES

5. Plaintiff name: Christopher K. Sweeney, (herein "Chris"). Address: 1077 SW McFarlane Ave. City, State, Zip: Lake City, FL 32025. Mailing address: 370 SE Baya Dr., Apt. 102. City, State, Zip: Lake City, FL 32025. Telephone: (352) 318-8753

6. Defendant's Name: ACRO CONSTRUCTION, LLC, (herein "Acro"). Address: 1700 W. 11th Street. City, State, and Zip: Panama City, FL 32401.

7. Defendant's Name: Alan Cooper, (herein "Alan"). Name of Employer (if relevant): Cooper Mechanical. Address: 11136 River Creek Drive East. City, State, and Zip: Jacksonville, FL 32223.

## JURISDICTION

8. Basis of Jurisdiction contains Federal Questions: Fair Labor Standards Act (herein, "FLSA"), Davis Bacon and Related Acts (herein, "DBRA"), EO's 13706, 13658 and 14026, Copeland Anti-Kickback Act, False Claims Act, among other federal acts and laws.

9. Basis of Jurisdiction is diversity of citizenship:

a. Plaintiff is an individual and Citizen of: Columbia County, FL.

b. Defendant Acro Construction, LLC, Principal Place of Business is 1700 W. 11th St., Panama City, FL 32401, Billy Tolson (herein, "Billy") is the Registered Agent.

c. Defendant Alan Cooper is a citizen of Duval County, FL.

## STATEMENT OF FACTS

10. In 2014 Plaintiff began working as a misclassified hourly laborer, through Construct Corp's (a construction staffing company), and performed Journeyman construction work, Foreman, and Superintendent duties before being hired directly with Acro in 2016.

11. Since 2020-04-09, Plaintiff was misclassified as an exempt employee from the overtime provisions of the FLSA, to avoid paying the DBRA Prevailing Wages.

12. Since 2020-04-09, Plaintiff performed mechanic and labor duties for two-thirds of hours worked, most as lead Journeyman with approx. 100 unregistered apprentices or helpers (misclassified as laborers), who performed with tools of construction craft classification under the DBRA on many Federal Government (herein, "US") Contracts, subject to the Prevailing Wage Determinations (herein, "PW") on US Contracts.

13. Most apprentices and helpers were temporary workers, and in 2022 Chris began advocating for proper wages and conformance to labor standards on the Federal Contracts.

14. Chris does not meet any of the exemption requirements under the FLSA and Defendants did not specify an exemption classification in their answer and affirmative defenses filed on May 27, 2025 to which the Plaintiff can defend.

15. Plaintiff worked primarily outside of Florida at infrastructure construction and service act projects for the US based on the Government drawings, specifications, Scope of Work and Contract, where Acro was the Prime Contractor.

16. Chris bore the company expenses for Acro, where he was compensated only partially for mileage by IRS standards for use of his personal vehicles, though maintaining 2 road worthy full size pickup trucks and pulled the company trailer to

projects in Nebraska, Maine and other States from Florida, and was required at times to maintain commercial auto insurance by Acro, who billed the US the full IRS rate before adding Overhead and Profit (herein, "OH&P).

17. While traveling, Chris was compensated unfairly for travel Meals and Incidental Expenses, commonly known as a portion of "per diem" Plaintiff received far less than half of what a comparable Federal Government employee on the projects the Plaintiff worked with, who had the GSA rate which has been deemed "fair" under the General Services Administration (herein, "GSA") rate, where Chris bore the expenses for Acro, who billed the U.S. for the full GSA rate before adding OH&P.

18. From 2020 to August 2023, Chris was limited to charging only 5 days a week per diem, though working 7 days on some weeks.

19. The Plaintiff has bore the company expenses of Acro since beginning employment, paying for storage of Company tools and materials, replacing phones, computers and other electronics for company use, and Chris maintained the services and provided increases thereto to maintain the level of professionalism and due diligence required by performance on US projects. Plaintiff additionally provided the Company with a home office from Chris's residence and used his backyard and space in the interior of his residence for storage of company items, without reimbursement.

20. In 2023 the Plaintiff was not reimbursed after getting prior approval to pay a subcontractor out of his funds.

21. In 2023, Chris purchased materials for a project where he was not reimbursed.

22. In 2023, Chris, having received prior approval from Acro to advance up to $20.00/day for workers needing sustenance, provided an employee with paycheck advance. Plaintiff was not reimbursed per the policy, of deducting pay advances from the receiving employees paycheck, as the policy had changed without notice.

23. Though Chris's primary duty was performing as a Journeyman Construction Worker, using tools of the craft occupation, he was often titled as Project Manager, (herein, "PM") , Assistant PM, Safety Officer, Foreman, Risk Analyst, Superintendent, Estimator, Bid Coordinator, among others titles.

24. Plaintiff was involved in interstate commerce.

25. Acro directed Chris, in Acro's self-performance of the Contract to demo and install Concrete, Block/Brick, Refrigerants, HVAC units, Electromechanical Controls, DDC controls, Acoustical Ceiling, Sheet Metal Duct, Structural Steel, Metal Fabs, Welds/Welding, Carpentry, Drywall, Pipefittings, Tile, Plumbing, Insulation and Paint, among others.

26. The Plaintiff's duties were directed by Alan Copper, Lorenzo Alvidrez (herein, "Lorenzo"), Billy Tolson, Elizabeth Chastain (deceased) and Tamara Lamm, (herein, "Tamara").

27. Plaintiff regularly worked more than forty (40) hours per workweek of which actual hours worked were submitted prior to April 9, 2020 until August 2023. Though

Chris's paychecks stubs indicate he was never paid for hours worked between hours 40 to 50 each week.

28. Alan directed hours worked to be accounted to projects, to other projects than actually worked on.

29. In 2020 to August of 2023 Acro paid overtime (herein, "OT") on a partial basis (instead of 1.5 times) for hours worked over 50 hours, with changing standards over time, which required week-to-week transfer of hours to maintain a minimum 50 hour workweek, not counting federal holiday time, saving hours over 50 per week for sick leave, vacation time and personal leave.

30. In July 2023, Chris was required to explain and justify his hours and went 2 or 3 weeks without pay, even though he continued to work and renegotiated terms of employment.

31. In August 2023, Alan implemented for timesheets to show 40-hour week only, while Plaintiff maintained hours separately for driving and non-PM overtime, though not showing PM hours; such was conditioned upon a profit share not to be lower than all hours worked (kept by Plaintiff) as straight time, with no week paid less than $1,200.00. The profit share was on a per project metric where driving time and non-PM OT, would be weighted with % of PM duties and profit over 8% weighted to who led bid.

32. The week of the negotiating, Chris worked under 40 hours on an hourly basis though not paid for all time worked as he followed Alan's instruction to not count PM time and Chris was underpaid for the total hours worked that workweek.

33. Plaintiff worked no less than 40 hours a week, except a few holiday weeks and the week he advocated for payment of the profit share from August 2023 to the end of employment in October 2024. Chris worked more than 100 hours per week during 4 workweeks in 2024.

34. Alan billed Acro by his employer Cooper Mechanical for equipment on the job as Chris had recently quoted the same brand and model the next size up, included startup costs, not included on paid equipment for $15,000.00 less.

35. The first project completed in Nov 2023 under the profit share arrangement led to Chris being underpaid on OT hours but was a 1/3 profit share of the project, as a "bonus", where Alan led bid, provided most PM duties, yet with lower than 8% profit.

36. In Jan 2024, agreement was the same, but minimum to $1,600.00/wk.

37. Plaintiff spoke to Alan in July 2024 about the last project completed where Chris led the bid, performed most PM duties, worked more overtime and earned more than a $100k profit well above the 8% metric and the conversation led Plaintiff to believe Alan was attempting to not honor the profit sharing agreement.

38. In August 2024, Plaintiff advised Lorenzo of concerns regarding Alan backing out of the deal and Lorenzo disclosed Billy's changes taking first 10% profit before

profit sharing, which affects Chris's, Alan's and Lorenzo's income. Alan and Lorenzo knew of changes, Chris did not.

39. Plaintiff thereafter called Alan who made an untrue statement, regarding communication of hours worked per workweek, that led Plaintiff to believe Alan was telling Billy, Plaintiff was working only 40 hours a week. Plaintiff started seeking legal advice and Counsel.

40. On 2024-09-04, Billy authorized OT via email by Tamara Lamm (herein, "Tamara"), by committing to a 6-week schedule, where such was premised on a conference call with the Contracting Officer (herein, "CO") on a Federal Contract.

41. Plaintiff sent a timesheet for week ending 2024-09-07 and was only paid for 40 hours despite working 64.25 hours total, (24.25 hours of OT).

42. Plaintiff's Attorney sent in a Letter of Demand on 2024-09-17 for unpaid compensation, requesting records and mentioned the intent for a Department of Labor inquiry.

43. Billy responded on 2024-09-24, disagreeing with the letter of demand.

44. On or about 2024-10-07, in multiple email chains, Chris disclosed to the CO unpaid wages, requested certified payrolls from Acro and in response to an email of confusion by the CO stated, "Please refer to my email sent at 10:55 AM where I have requested whistleblower protections.", where Acro was copied.

45. The certified payrolls are known to Acro as falsified, which requires compliance to the PW and labor standards in contract documents, which would prove Acro purposely falsified applications for payment to the U.S. under the False Claims Act.

46. On 2024-10-11, Billy emailed a Termination Letter, which mentions federally protected activities and a falsified set of facts as reasons for the Plaintiff's termination.

47. The Plaintiff never received paid sick leave under the US Contracts he performed under, neither vacation pay, nor pay for some Federal Holidays, however the Plaintiff's paycheck stubs indicate Defendants falsely claimed compliance to the FLSA, through the Certified payrolls.

**CLAIM 1 - UNPAID OVERTIME UNDER THE FLSA**

48. Based on facts in paragraphs 10, 11, 12, 13, 14, 15, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 45, 46 and 47 herein, Plaintiff is not an exempt employee from OT, and does not qualify for any salary exemption, which is the Defendants burden and is owed unpaid OT, under the provisions of 29 U.S.C. § 201 et seq., the Fair Labor Standards Act. Plaintiff is entitled to recovery for willful violation of the FLSA for 3-years under Federal Law, 5-years under Florida law.

**CLAIM 2 – UNPAID WAGES FOR HOURS AND WEEKS WORKED**

49. Based on facts in paragraphs 11, 12, 13, 14, 15, 16, 17, 19, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 45, 46 and 47 herein, Plaintiff

is entitled to compensation for hours worked and entire weeks unpaid where Plaintiff worked under the provisions of 29 U.S.C. § 201 et seq., the Fair Labor Standards Act. Chris is entitled to recovery for this willful violation of the FLSA for 5-years under Florida law and 3-years under US law.

## CLAIM 3 – UNPAID MINIMUM WAGE UNDER FLORIDA LAW

50. Based on facts in paragraphs 11, 12, 13, 14, 15, 16, 17, 19, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 39, 45, 46 and 47 herein, Plaintiff is entitled to compensation for work performed in the State of Florida, where the pay failed to meet the State's minimum wage requirements in willful violation of Florida's Minimum Wage Act, F.S. § 448.110 (hereinafter the "FMWA"), which considers the FLSA pre-requisite that Plaintiff is entitled to minimum and OT wages in addition to the unjust enrichment claims below, specifically Article X, Section 24 of the Florida Constitution and related Florida State Statutes.

## CLAIM 4 – UNJUST ENRICHMENT – UNREIMBURSED EXPENSES

51. Based on facts in paragraphs 19, 20, 21, 22, 24, 25, 26, 30, 32, 34, 35, 36, 37, 38, 39, 45, 46 and 47 herein, Plaintiff is entitled to compensation for Defendants unjust enrichment for direct expenses under the FLSA, 29 U.S.C. § 201 et seq, for the willful violation of the FLSA, where the costs cut into minimum and overtime wages.

52. Additionally, the Plaintiff is entitled to relief under Florida and US contract law, where Acro falsely claimed in their pay apps to the US they paid all debt obligations on the US Contract.

**CLAIM 5 – UNJUST ENRICHMENT – TRAVEL EXPENSE**

53. Based on facts in paragraphs 16, 17, 18, 19, 21, 24, 25, 26, 29, 30, 32, 34, 35, 36, 37, 38, 39, 45, 46 and 47 herein, Plaintiff is entitled to compensation for Defendants unjust enrichment for travel expenses under the FLSA, 29 U.S.C. § 201 et seq, for the willful violation of the FLSA, where the costs cut into minimum and overtime wages.

54. Acro willfully violated the FLSA and False Claims Act, where Acro billed the US for expenses itemized on within the US Contracts and supporting documentation, then charged O,H&P to the US, in part of Acro's willful FLSA violations, without actually paying what Acro charged the US.

**Claim 6 – WRONGFUL TERMINATION AND RETALIATION**

55. Based on facts in paragraphs 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46 and 47 herein, the Plaintiff was wrongfully terminated and retaliated against by Defendants, who took adverse action against the Plaintiff for engaging in protected activities, by terminating the Plaintiff's employment through falsified reasons for the Termination of employment, in willful violation of the FLSA, where the Plaintiff was protected as a whistleblower, by the Florida Civil Rights Act, and the FLSA, 29 U.S.C. § 201 et seq.

## REQUESTED RELIEF

56. WHEREFORE, the Plaintiff has submitted documentation and exhibits to Defense Counsel in the Court's files, a USB drive with 11,186 exhibits and 3 live documents, where Defense Counsel can track live progress of information on a week-by-week basis for the timeframe of April 9, 2020 to April 9, 2025, where the discovery process will define the calculation of damages, throughout to the end of discovery, for final amendment of damage calculations for the jury.

57. WHEREFORE, the wrongs alleged are continuing due to spoliation, intimidation, defamation, libel and slander, through Acro's Partner's and employees, at the present time. The amount of damage is continuing as the Defendants have not provided documents requested to account for all damages of which the Plaintiff may be entitled.

58. WHEREFORE, the Plaintiff, on Claim 1 is entitled to the following monetary damages submitted on April 9, 2025 in an exhibit (Doc 1-2, p. 46 to 49) for unpaid OT, this amount includes: $133,074.43 in unpaid overtime wages; liquidated damages of $133,074.43, for a total of $266,148.86, plus attorney's fees, court costs, and further relief as this Court deems equitable and just.

59. WHEREFORE, the Plaintiff, on Claim 2 is entitled to $2,200.00 to $5,000.00 in unpaid weeks of wages; liquidated damages of: $2,200.00 to $5,000.00, and Plaintiff's, attorney's fees and costs, The Plaintiff prays the Court Grant such other and

further relief as this Court deems equitable and just and/or available pursuant to Florida or Federal Law.

60. WHEREFORE, the Plaintiff, on Claim 3 is entitled to recover minimum wages and liquidated damages for up to five (5) years prior to the filing of this lawsuit, This amount includes: a yet to be determined amount of unpaid minimum wages; liquidated damages of: an equal amount, according to Florida Law and the FLSA, plus Plaintiff's, attorney's fees and costs, to be determined and further relief as this Court deems equitable and just.

61. WHEREFORE, the Plaintiff, on Claim 4, is owed $1,300.94 for T&M labor, $80.00 for paycheck advance, $409.38 for materials, and $154/weekly, for unjust enrichment, plus interests, costs, attorney's fees and any other relief the Court deems just and proper.

62. WHEREFORE, the Plaintiff, on Claim 5, is owed up to $0.20/mile, over the IRS rate which is "fair", a "fair" rate for Acro related travel M,I&E, for unjust enrichment, plus interests, costs, attorney's fees and any other relief the Court deems just and proper.

63. WHEREFORE, the Plaintiff, on Claim 6, is owed an amount yet to be determined, due to the continuing nature of the damages, plus any exemplary and punitive damages, costs, expert witness fees, attorney's fees and any other relief the court deems just and proper.

## CERTIFICATION

As required by Federal Rule of Civil Procedure 11, I certify by signing below that to the best of my knowledge, information, and belief, this complaint: (l) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to timely notify the Clerk's Office if there is any change to my mailing address, I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date: 9/3/2025

Plaintiff's Signature: Christopher K. Sweeney

Printed Name of Plaintiff: Christopher K. Sweeney

Address: 370 SE Baya Dr., Apt. 102, Lake City, FL 32025

E-Mail Address: GainesvilleChris@gmail.com

Telephone Number: (352) 318-8753

Respectfully Submitted,

X______________________________

Christopher K. Sweeney, Pro Se.

The Plaintiff declares, a true and correct copy of the foregoing will be furnished to Defense Counsel, by US Mail this 3rd day of September 2025.

______________________________

Christopher K. Sweeney

370 SE Baya Dr., Apt. 102

Lake City, FL 32025

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by US Mail to counsel for the Defendants, Adams & Reese, LLP at 100 N Tampa Street, Suite 4000, Tampa, FL 33602 on this date, September 3, 2025.

______________________________

Christopher K. Sweeney, Pro Se.